IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA )
)
v. )
) Criminal No. 3:08CR226–HEH
JASON CUMMINGS, )
)
Petitioner. )

## MEMORANDUM OPINION
(Denying in Part 28 U.S.C. § 2255 Motion)

Jason Cummings ("Cummings"), a federal inmate proceeding by counsel, submitted this amended motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. The Government filed its response, and Cummings has replied. The matter is now ripe for disposition.

## I. PROCEDURAL HISTORY

### A. Cummings's Arrest

On April 17, 2008, Virginia State Trooper Kyle Jackson observed Cummings's vehicle speeding and swerving on Interstate 85 in Brunswick County, Virginia.[1] (Pol. Rep. 1; July 14, 2008 Tr. 13–14.) Trooper Jackson initiated a traffic stop, and approached Cummings. (Pol. Rep. 1.) Trooper Jackson noticed a strong smell of burnt marijuana and a marijuana stem on the passenger's window sill. (*Id.*) Trooper Jackson

---

[1] The parties attached a police report to their pleadings that the Government introduced at sentencing as Exhibit 1. (Resp. Attach. A 1–2 (ECF No. 39-1); Nov. 14, 2008 Tr. 26.) The record will be expanded to include this document. *See* Rule 7, Rules Governing § 2255 Proceedings (2012). The Court employs the page numbers assigned to this document by the Court's CM/ECF docketing system.

asked Cummings for identification and explained the reason for the stop. (*Id.*) After Cummings failed to provide a license, Trooper Jackson asked Cummings to exit the vehicle and to sit in the patrol car. (*Id.* at 1–2.) Cummings then provided a false name of Jose Williams. (*Id.* at 2; Nov. 14, 2008 Tr. 23.) Cummings explained that Alvin Alexander, an individual not in the vehicle, rented the vehicle in Charlotte, North Carolina for a trip to Bronx, New York. (Pol. Rep. 2; Nov. 14, 2008 Tr. 10–11, 15.) During his attempt to determine Cummings's identity, the police computer system returned information about a subject wanted for drugs out of New York with the alias "Kiss Cummings" with a scar on his right arm. (Pol. Rep. 2; Nov. 14, 2008 Tr. 23.) Cummings's passengers confirmed that they knew Cummings as "Kiss," and Trooper Jackson observed the scar on Cummings's right arm. (Pol. Rep. 2.) Trooper Jackson placed Cummings in investigative detention and searched the vehicle. (*Id.*) Trooper Jackson found "marijuana shake" throughout the vehicle and a resealed cereal box in the rear passenger compartment. (*Id.*) The cereal box contained ninety grams of heroin. (*Id.*; Nov. 14, 2008 Tr. 22.)

Trooper Jackson read Cummings his *Miranda*[2] warnings, and Cummings stated that he understood his rights and wished to continue speaking with Trooper Jackson. (Pol. Rep. 2.) Cummings explained that he had been a fugitive for over two years, he sold drugs to survive, and he made $250.00 per gram for heroin in the Charlotte area.

---

[2] *Miranda v. Arizona*, 384 U.S. 436 (1966).

2

(*Id.*) Cummings acknowledged that the heroin belonged to him. (Nov. 14, 2008 Tr. 10, 22, 28.)

Trooper Jackson contacted Special Agent Scott Caporossi of the Drug Enforcement Administration. (*Id.* at 6) Special Agent Caporossi drove to Brunswick County based upon the open federal arrest warrant for distribution of drugs in New York and the recovery of heroin from the vehicle. (*Id.* at 6–7.) Special Agent Caporossi verified the 2006 warrant by speaking with New York Detective Joseph Maldonado. (*Id.* at 16). Detective Maldonado noted that he received information from cooperators and informants placing Cummings in North Carolina. (*Id.* at 7, 16–17, 20–21.)

Before interviewing Cummings, Special Agent Caporossi again warned Cummings of his *Miranda* rights, and Cummings indicated that he wished to speak with the agent. (*Id.* at 7–9.) Cummings confirmed that the heroin belonged to him. (*Id.* at 10.) Special Agent Caporossi opined that Cummings "bragg[ed] about the level of [his] narcotics trafficking" and he seemed "cocky." (*Id.* at 18.) Cummings explained that he was taking the heroin found in the car to Charlotte for a selling "test run" and stated, "[i]t was only three and a half ounces." (*Id.* at 11.) Cummings noted he fled to Charlotte because of the pending charges in New York. (*Id.* at 11.) He explained that he started selling heroin in North Carolina in January 2007 because he needed money. (*Id.* at 11–12.) Cummings obtained heroin by placing calls to family members in New York and asking for a supply of heroin. (*Id.* at 12–13.) Females who served as "mules" brought the heroin to him in Charlotte and then gave the money to Cummings's New York

3

relatives. (*Id.*) From April of 2007 until his arrest in April of 2008, Cummings noted he distributed one and a half to two kilograms a month. (*Id.* at 11–12.) Cummings stated that he sold a kilogram of heroin in seven to ten days. (*Id.* at 12.) Cummings allowed Special Agent Caporossi to look at Cummings's cellular telephone. (*Id.* at 15.)

### B. Criminal Proceedings

On July 14, 2008, Cummings pled guilty without a written plea agreement to possession with intent to distribute a substance containing a detectable amount of heroin, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C). (July 14, 2008 Tr. 7, 9, 15–16.) The Court sentenced Cummings to 225 months of imprisonment. (Judgment 2 (ECF No. 21).) The Fourth Circuit subsequently affirmed this Court's judgment. *United States v. Cummings*, 337 F. App'x 313, 316 (4th Cir. 2009).

Cummings then filed a *pro se* motion pursuant to 28 U.S.C. § 2255 raising one claim of ineffective assistance of counsel and one claim pertaining to false testimony. (§ 2255 Mot. 5–6 (ECF No. 32).) In his Memorandum in Support, Cummings appears to raise three claims of ineffective assistance. (Mem. Supp. § 2255 Mot. II. (ECF No. 34).) By Memorandum Order entered on February 22, 2011, the Court directed the United States to respond. (ECF No. 35.) On March 7, 2011, Cummings filed a Motion to Supplement Pleadings (Mot. Suppl. § 2255 (ECF No. 36)), seeking to add three more claims of ineffective assistance of counsel. By Memorandum Order on April 5, 2011, this Court directed the United States to respond to Cummings's additional claims. (ECF No. 38.)

4

On January 3, 2012,[3] Cummings filed a Motion for Leave to Amend his §2255 Motion ("Motion to Amend") (ECF No. 41) with an accompanying brief in support in which Cummings seeks to "correct errors in his pleadings" (ECF No. 42). Upon reviewing the Motion to Amend and Memorandum in Support, the Court finds that Cummings merely provides support for previously raised claims. Thus, the Motion to Amend (ECF No. 41) will be granted.

After thoroughly examining Cummings's filings, the Court identifies the following claims:

| | |
|---|---|
| Claim One: | Counsel violated Cummings's Sixth Amendment[4] right to effective assistance of counsel by allowing Cummings to enter into an unknowing and involuntary plea. (§ 2255 Mot. 5.) |
| Claim Two: | "During the preliminary hearing and sentencing, Agent from Drug Enforcement Agent [sic] gave false testimony of drug activity where their [sic] was no written or videotape, audio to prove any statement."[5] (*Id.* at 6.) |
| Claim Three: | Counsel deficiently failed to move to suppress the heroin. (Mem. Supp. § 2255 Mot. II–V; Mem. Supp. Mot. Amend § 2255 7–10.) |
| Claim Four: | Counsel deficiently failed to suppress the statements made to authorities because Cummings was under the influence of drugs. (Mem. Supp. § 2255 Mot. VI–VIII.) |

---

[3] This is the date Cummings swears he placed the Motion to Supplement in the prison mailing system and, thus, the date the Court deems it filed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).
[4] "In all criminal prosecutions, the accused shall enjoy . . . the Assistance of Counsel for his defence." U.S. Const. amend. VI.
[5] The Court corrects the capitalization and punctuation in the quotations to Cummings's pleadings.

Claim Five: Counsel deficiently failed to move to "suppress" Cummings's statements used to enhance his sentence or ensure that the United States proved the quantity of drugs attributable to Cummings beyond a reasonable doubt. (Mem. Supp. § 2255 Mot. IX–XIII; Mem. Supp. Mot. Amend. § 2255, at 10.)

Claim Six:[6] Counsel deficiently failed to object to venue because there was "no evidence connecting [C]ummings to the distribution of 18 kilograms of heroin took place in the district of the trial court." (Mot. Suppl. § 2255 2; Traverse 10–12.)

Claim Seven: Counsel deficiently "fail[ed] to argue during sentencing and on direct appeal that an insufficient factual basis existed for the acceptance of the guilty plea as it pertains to the quantity of heroin attributed to Cummings for the purpose of sentencing." (Mot. Suppl. § 2255 3.)

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

To demonstrate ineffective assistance of counsel, a defendant must first show that counsel's representation was deficient, and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, a defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the

---

[6] The Court combines Cummings's first two claims in his Motion to Supplement Pleadings as they both contest whether this Court was the proper venue for his guilty plea. (*See* Mot. Suppl. § 2255, at 2.)

result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, the Court need not determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Cummings's assertion that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474 U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70.

Of course, in conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977).

Therefore, "in the absence of extraordinary circumstances, allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations and quotations omitted). Accordingly, the Fourth Circuit has admonished that "[i]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 221–22.

### III. ANALYSIS

#### A. Involuntariness of Plea (Claim One)

In Claim One, Cummings argues: "Violation of my Sixth Amendment right to effective [ ] assistance . . . conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea. Denial of effective assistance." (§ 2255 Mot. 5.) Cummings indicates "argument which support and cite case law will be file[d] in additional brief." However, the brief contains no further argument for Claim One. (*Id.*) Neither Cummings's conclusory allegations nor the record suggest the involuntariness of Cummings's plea.

During the Rule 11 plea colloquy, Cummings swore that he understood the Court possessed the ability to sentence him up to the statutory maximum of twenty years (July

8

14, 2008 Tr. 7–8), that he had sufficient opportunity to discuss the charge and sentencing possibilities with counsel (*Id.* at 8–9), and he understood that by pleading guilty to the charge he agreed "to allow the sentencing judge to make any sentencing determination on his own . . . and [to] do so based on a standard of proof of preponderance of the evidence which is a lower standard of proof than that of proof beyond a reasonable doubt, as would have been required at trial." (*Id.* at 9.) Cummings agreed he was "entirely satisfied" with counsel's performance and that nobody "forced or compelled" him to plead guilty or promised him anything to induce his plea. (*Id.*) Cummings stated that he intended to plead guilty because he was in fact guilty of the charge. (*Id.* at 11–12.) Moreover, Cummings acknowledged that any sentencing estimate provided by counsel was only a prediction, not a guarantee of a particular sentence. (*Id.* at 12.) The United States proffered evidence to support the plea and Cummings agreed with the summary of the evidence. (*Id.* at 13–15.)

The record refutes Cummings's conclusory claim that he entered into an unknowing and involuntary plea. *Sanders v. United States*, 373 U.S. 1, 19 (1963) (finding denial of § 2255 motion appropriate where it "stated only bald legal conclusions with no supporting factual allegations"). Because Claim One necessarily relies on conclusory allegations contradictory to Cummings's statements during the plea colloquy, this claim will be dismissed.

### B. Suppression Claims (Claims Three and Four)

#### 1. Suppression of Heroin (Claim Three)

In Claim Three, Cummings faults counsel for failing to move to suppress the heroin found in the vehicle in light of *Arizona v. Gant*, 556 U.S. 332 (2009).[7] (Mem. Supp. § 2255 Mot. II–V; Mem. Supp. Mot. Amend § 2255 7–10.) Cummings's conviction became final in 2008, prior to the Supreme Court's decision in *Gant*. Thus, he fails to demonstrate counsel performed deficiently by not anticipating the Supreme Court's decision. *United States v. McNamara*, 74 F.3d 514, 516–17 (4th Cir. 1996) (citing *Kornahrens v. Evatt*, 66 F.3d 1350, 1360 (4th Cir. 1995)).

Had Cummings's counsel made a pre-trial motion to suppress, it would have been denied under the then-binding circuit law. *See United States v. Bush*, 404 F.3d 263, 275–76 (4th Cir. 2005).[8] Counsel, "mindful of the controlling circuit law at the time," reasonably eschewed objecting to the admissibility of evidence resulting from the April 17, 2008 vehicle stop. *See McNamara*, 74 F.3d at 517. Thus, Cummings cannot show that counsel acted deficiently by failing to make a suppression motion based on *Gant*.

---

[7] In *Gant*, the Supreme Court held that "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest." *Id.* at 351.

[8] In *Bush*, the Fourth Circuit upheld the search of a vehicle incident to arrest stating:

> In *Belton*, the [Supreme] Court held that, "when a policeman has made a lawful custodial arrest of the occupant of an automobile, he may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile." *[New York v. ]Belton*, 453 U.S. [454,] 460 [(1981)]. *Belton* did not purport to answer whether such a rule applied in cases where a recent occupant of a car was arrested in the immediate vicinity of the vehicle. This past term, the Supreme Court decided, in [*Thornton v. United States*, 541 U.S. 615, 622–23 (2004)], that *Belton* permits search of vehicles incident to arrests made outside of the vehicle as long as the arrested individual was a recent occupant of the vehicle.

*Bush*, 404 F.3d at 275 (parallel citations omitted). Here, Cummings clearly occupied the vehicle immediately before his arrest, and he does not challenge the lawfulness of his arrest.

Moreover, even with the benefit of *Gant*, Trooper Jackson possessed reason "to believe the vehicle contain[ed] evidence of the offense of arrest," *Gant*, 556 U.S. at 351, as Trooper Jackson observed the odor of burnt marijuana and evidence of the same in the vehicle. (Pol. Rep. 1–2.) Accordingly, because Cummings fails to demonstrate deficiency, Claim Three will be dismissed.

### 2. Suppression of Cummings's Statements (Claim Four)

In Claim Four, Cummings faults counsel for failing to move to suppress the statements Cummings made to Trooper Jackson and Special Agent Caporossi. Cummings contends that his intoxication during the interviews made his statements involuntary. The record belies Cummings's claim.

The Fifth Amendment[9] privilege against compulsory self-incrimination bars the admission of involuntary confessions against the accused. *Jackson v. Denno*, 378 U.S. 368, 376 (1964). A defendant seeking to exclude a statement as involuntary must demonstrate that his "will was overborne in such a way as to render his confession the product of coercion." *Arizona v. Fulminante*, 499 U.S. 279, 288 (1991). In determining the issue of voluntariness, a court must consider "'the totality of all the surrounding circumstances—both the characteristics of the accused and the details of the interrogation.'" *Dickerson v. United States*, 530 U.S. 428, 434 (2000) (quoting *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973)). The surrounding circumstances include "not only the crucial element of police coercion," but also "the length of the

---

[9] "No person shall . . . be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V.

11

interrogation, its location, its continuity, the defendant's maturity, education, physical condition, and mental health." *Withrow v. Williams*, 507 U.S. 680, 693 (1993) (internal citations omitted).

Trooper Jackson read Cummings his *Miranda* warnings and Cummings agreed he understood. Cummings then provided detailed statements about his drug distribution activities in the Charlotte area. (Pol. Rep. 2.) Moreover, during sentencing, Special Agent Caporossi explained that he also provided Cummings with his *Miranda* warnings, and Cummings stated that he understood his rights, but, nevertheless, wanted to speak with the agent. (Nov. 14, 2008 Tr. 8–9.) Special Agent Caporossi noted that during the interview, Cummings appeared "arrogant" and "cocky," and that Cummings "bragg[ed] about the level of [his] narcotics trafficking." (*Id.* at 18.) Cummings freely offered detailed information about the quantity of heroin that he sold and the manner in which he obtained the heroin. (*Id.* at 10–18.)

Cummings argues that he "was clearly and undoubtedly under the influence of a controlled substance (drug) at the time of his arrest and [his] post-arrest statement," rendering his statements not knowingly and intelligently made. (Mem. Supp. § 2255 Mot. VII.) As support for his allegation of impairment, Cummings contends: (1) Trooper Jackson stopped him for reckless driving; (2) Trooper Jackson smelled burnt marijuana when he approached the car; (3) after placing Cummings in the patrol car, Trooper Jackson noticed Cummings sweating profusely and breathing heavily; (4) the officers found marijuana on Cummings's person; and (5) officers found cocaine on a

12

passenger in the vehicle. (*Id.*) However, a defendant's ingestion of alcohol or drugs does not necessarily negate a knowing and voluntary waiver. *See United States v. Sledge*, 546 F.2d 1120, 1122 (4th Cir. 1977). Even assuming that Cummings smoked marijuana before his arrest, the record lacks evidence that Cummings's impairment rendered him incapable of thinking freely and rationally. *See United States v. Cristobal*, 293 F.3d 134, 141–43 (4th Cir. 2002) (affirming district court's finding that a defendant on narcotics knowingly and voluntarily waived his *Miranda* rights and made subsequent statements). Cummings twice indicated that he understood his rights and waived them, and subsequently provided lucid, detailed information about his drug dealing.

Because the record contains neither indicia of coercion nor evidence of unknowing and involuntary statements, counsel cannot be faulted for failing to move for an unmeritorious motion to suppress Cummings's statements. Accordingly, Claim Four will be dismissed.

### C. Sentencing Claims (Claims Five and Seven)

In Claim Five and Seven, Cummings argues that counsel deficiently failed to object to the use of his statements to police to enhance his sentence. Cummings contends that the Court improperly used his statements about the amount of drugs he sold and the methods employed to sell the drugs to enhance his sentence because the Government needed to prove the drug quantity attributed to Cummings beyond a reasonable doubt.

First, counsel objected to the use of Cummings's post-arrest statements to enhance his offense level. Counsel argued that Cummings's uncorroborated statements lacked

sufficient indicia of reliability and that the Court should only attribute the 88.6 grams of heroin found in Cummings's vehicle as relevant conduct. (Nov. 14, 2008 Tr. 30–37; Pos. Reg. Sentencing Factors 1–6 (ECF No. 17).) The Court noted that the "the defendant [can] be held accountable for relevant conduct. And relevant conduct includes anything that's part of a scheme or plan of which the instant charge is a part." (Nov. 14, 2008 Tr. 30.) The Court overruled counsel's objection. (*Id.* at 37.) Thus, Cummings's claim— that counsel failed to object to the drug weight attributed to Cummings at sentencing— lacks factual merit. Moreover, Cummings fails to identify any plausible strategy omitted by counsel that could have succeeded in reducing the amount of drugs attributed to him at sentencing.

Buried in his "TRAVERSE TO GOVERNMENT[']S RESPONSE" (ECF No. 40), Cummings argues that counsel deficiently failed to inform him of the United States's ability to use his post-arrest statements as relevant conduct at sentencing, and that but for this error he would not have pled guilty and proceeded to trial. (Traverse 9–10.) The Rule 11 colloquy, however, cured any alleged failure on counsel's behalf concerning the sentence Cummings could expect to receive. *See United States v. Foster*, 68 F.3d 86, 88 (4th Cir. 1995) (quoting *United States v. Lambey*, 974 F.2d 1389, 1395 (4th Cir. 1992)). During the colloquy, Cummings agreed that counsel discussed the charge and sentencing possibilities with him, and he understood that the Court could sentence him to any amount of time within the statutory maximum of twenty years. (July 14, 2008 Tr. 7–8.) Cummings agreed he understood that by pleading guilty to the charge he agreed "to allow

the sentencing judge to make any sentencing determination on his own ... based on a standard of proof of preponderance of the evidence which is a lower standard of proof than that of proof beyond a reasonable doubt, as would have been required at trial." (*Id.* at 9.) Moreover, Cummings agreed that any sentencing estimate provided by counsel was only a prediction, not a guarantee of a particular sentence. (*Id.* at 12.) Thus, Cummings cannot show that any misinformation or lack of information from counsel prejudiced him. *Foster*, 68 F.3d at 88. Accordingly, Claims Five and Seven will be dismissed.

### D. Venue Claim (Claim Six)

Cummings next argues that counsel performed deficiently by failing to argue improper venue. In his Traverse, Cummings explains that "petitioner does not challenge the courts venue over the charged offense. He do, however, asserts and contends that, the district court improperly assumed venue over the post-arrest statements ... so as to increase his sentence ... because the conduct occured outside the jurisdiction of the trial court [sic]." (Traverse 10–11.) Cummings's arrest took place in Brunswick County, Virginia, in the Eastern District of Virginia. Cummings explained that he was driving from New York to Charlotte and that he obtained heroin in New York to sell in North Carolina. (Nov. 14, 2008 Tr. 11–13.) While labeling this as a challenge to venue, Cummings instead believes the Court improperly included his statements about his drug trafficking in North Carolina and New York as relevant conduct to increase his sentence. Despite Cummings's assertions to the contrary, relevant conduct includes Cummings's

drug trafficking activities occurring outside this district. *See United States v. Hodge*, 354 F.3d 305, 313–15 (4th Cir. 2004). Thus, counsel cannot be faulted for failing to raise this frivolous argument. Cummings's drug distribution activity outside of Virginia involved the same course of conduct and a continuous pattern of narcotics trafficking between states. Thus, the Court appropriately considered it as relevant conduct. *See id.* at 313–15. Accordingly, Claim Four will be dismissed.

### IV. PERJURED TESTIMONY (Claim Two)

In Claim Two, Cummings states only that Special Agent Caporossi "gave false testimony of drug activity where their [sic] was no written or videotape, audio to prove any statement." (§ 2255 Mot. 6.) Because Cummings could have, but failed to raise Claim Two on direct appeal, he procedurally defaulted the claim. *See Bousley v. United States*, 523 U.S. 614, 622–23 (1998); *United States v. Frady*, 456 U.S. 152, 167–68 (1982). Cummings fails to show cause and prejudice or his actual innocence to excuse his default. Accordingly, Claim Two will be dismissed.

### V. OUTSTANDING MOTION FOR LEAVE TO SUPPLEMENT

On April 25, 2012,[10] Cummings filed a "SUPPLEMENT TO HIS 28 U.S.C. §2255 MOTION, BASED ON INTERVENING SUPREME COURT CASE LAW" ("Second Motion to Supplement") (ECF No. 44). In his Second Motion to Supplement, Cummings seeks to add the following claim:

---

[10] This is the date Cummings swears he placed the Second Motion to Supplement in the prison mailing system and, thus, the date the Court deems it filed. *See Houston v. Lack*, 487 U.S. 266, 276 (1988).

16

Claim Eight: Counsel deficiently advised Cummings not to accept the United States's plea agreement with a stipulated drug quantity and advised Cummings to plead guilty without a plea agreement. (2d Mot. Suppl. 1.)

The Government has not addressed the Second Motion to Supplement. Accordingly, the Government will be directed to respond to the Second Motion to Supplement. The Government may raise procedural defenses but must also address the merits.

## V. CONCLUSION

Based on the foregoing analysis, Cummings's Motion to Amend (ECF No. 41) will be granted. Claims One through Seven will be dismissed. The Government will be directed to file an additional brief addressing Claim Eight.

An appropriate Order will accompany this Memorandum Opinion.

/s/
HENRY E. HUDSON
UNITED STATES DISTRICT JUDGE

Date: Feb. 14, 2013
Richmond, Virginia